## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

JOHN C. NELSON CONSTRUCTION, LLC                    PLAINTIFF

v.                            CIVIL ACTION NO. 2:18-CV-222-KS-MTP

BRITT, PETERS AND ASSOCIATES, INC., *et al.*              DEFENDANTS


### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** Defendants' Motion in Limine [54] to exclude the opinions and testimony of John Buziak and **denies** Defendants' Motion for Summary Judgment [53] on the Preclusive Effect of the Arbitration Award. However, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [52]; the Court grants the motion as to Plaintiff's punitive damages claim, but denies it in all other respects.

### I. BACKGROUND

Defendant Britt, Peters and Associates, Inc. ("BPA") entered into a contract with Mar-Jac Poultry MS, LLC to perform engineering, design, and construction administration services for a renovation of Mar-Jac's Hattiesburg plant. BPA designated Defendant Brett Underwood to be its lead project engineer. Plaintiff entered into a contract with Mar-Jac to perform construction services pursuant to the plans and specifications provided by Defendants. Plaintiff alleges, though, that Defendants failed to provide timely designs for an addition to the plant announced after the initial renovation project began. Plaintiff also alleges that Defendants'

design documents were insufficient and/or defective, requiring Plaintiff to develop its own designs.

Plaintiff contends that Defendants' negligent design and construction administration caused it to incur additional costs to complete the project. Mar-Jac refused to pay some of the invoices, and Plaintiff and Mar-Jac arbitrated their payment dispute. The arbitrator awarded Plaintiff $910,534.00, but Plaintiff contends that it has still suffered damages of $6,231,338.46, caused by Defendants' negligence. Defendants filed several motions, which the Court now addresses.

## II. MOTION IN LIMINE [54]

Plaintiff hired John Buziak, an engineer, to "provide an expert opinion on the quality of design and level of support provided by" Defendants with respect to the Mar-Jac expansion project. Exhibit A to Response at 6, *John C. Nelson Const., LLC v. Britt, Peters & Assocs., Inc.*, No. 2:18-CV-222-KS-MTP (S.D. Miss. Feb. 7, 2020), ECF No. 66-1. Buziak asserts that Defendants failed to meet relevant schedule commitments, and that the design plans provided by Defendants were deficient in several respects. *Id.* at 8-9. Specifically, he claims that Defendants failed to accurately document existing site conditions, which caused several expansions of the project's scope. *Id.* at 10-12. He also believes that Defendants committed multiple engineering errors and omissions which increased Plaintiff's cost and delayed completion of the project. *Id.* at 12-15. Finally, he outlined several purported ethical breaches by Defendants, which he claims delayed Plaintiff's completion of the project.

*Id.* at 15-19. In summary, he opined that Defendants "repeatedly breached the Mississippi rules for the practice of engineering," that they "repeatedly breached the engineering standard of care," and that their "poor performance as engineers resulted in delays and greatly increased the cost of the project . . . ." *Id.* at 20.

Defendants filed a Motion in Limine [54] to exclude Buziak's testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Therefore, "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court provided a nonexclusive list of "general observations intended to guide a district court's evaluation of scientific evidence,"

including: "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Watkins*, 121 F.3d at 989 (punctuation omitted).

> Not every guidepost in *Daubert* will necessarily apply . . . , but the district court's preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue is no less important.

*Id.* at 990-91 (punctuation omitted).

Expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). It "must be reliable at each and every step or it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009). "Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

But the Court's role as gatekeeper is not meant to supplant the adversary system because "[v]igorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The Court should focus solely on the proposed expert's "principles and methodology, not on the conclusions that they generate." *Id.* at 595. But "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

In summary, the proponent of expert testimony must demonstrate that the proposed expert is qualified, that the testimony is reliable, and that it is relevant to a question of fact before the jury. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The proponent must prove these requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

## A.   *Qualifications*

First, Defendants argue that Buziak "is not qualified to give expert opinion on the standard of care owed by a professional engineer in Mississippi" or, more generally, in any locale. Memorandum in Support of Motion in Limine at 9-10, *John C. Nelson Const, LLC v. Britt, Peters & Assocs., Inc.*, No. 2:18-CV-222 (S.D. Miss. Jan. 17, 2020), ECF No. 59. Defendants listed fifteen reasons why they contend Buziak is not qualified to provide testimony on the applicable standard of care in this case. *Id.* at 9-11. The Court need not list them all here, as they all go to the weight of his testimony, rather than its admissibility.

5

Rule 702 provides that an expert may be qualified by "knowledge, skill, experience, training, or education . . . ." FED. R. EVID. 702. Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993). Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

A proposed expert does not have to be "highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Likewise, lack of personal experience "should not ordinarily disqualify an expert, so long as the expert is qualified based on some other factor provided by Rule 702 . . . ." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013). Moreover, an "expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Id.* at 168-69. Regardless of its source, "the witness's . . . specialized knowledge," must be "sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact." *Id.* at 167.

First, although Defendants appear to have abandoned the argument in their reply brief, they contend that Plaintiff must prove that Buziak is qualified to testify

as to the standard of care expected of engineers *in Mississippi*, as opposed to a *national* standard of care. Defendants cited no Mississippi law that requires a plaintiff asserting an engineering malpractice claim to prove the local standard of care. In response, Plaintiff correctly notes that Mississippi law does not impose a locality rule on malpractice claims against physicians. *See, e.g. Estate of Northrup v. Hutto*, 9 So. 3d 381, 384 (Miss. 2009). More to the point, Mississippi cases discussing the standard of care owed by an engineer do not mention a locality rule. *See, e.g. Caldarera v. Tenn. Log & Timber Homes, Inc.*, 2013 WL 5937396, at *8 (S.D. Miss. Nov. 4, 2013); *Magnolia Const. Co., Inc. v. Miss. Gulf S. Eng'rs Inc.*, 518 So. 2d 1194, 1202 (Miss. 1988). Therefore, in the absence of any Mississippi authority imposing a locality rule on engineering malpractice claims, Plaintiff is not required to demonstrate that Buziak is qualified to testify as to a local standard of care.

Defendants also argue that Buziak is not qualified to testify as to *any* engineering standard of care, local or otherwise. In response, Plaintiff presented evidence that Buziak is a licensed mechanical engineer in Florida, Alabama, and Mississippi. Exhibit A [66-1]; Exhibit D to Response, *John C. Nelson Constr., LLC v. Britt, Peters & Assocs., Inc.*, No. 2:18-CV-222-KS-MTP (S.D. Miss. Feb. 7, 2020), ECF No. 66-4. He has a B.S. in physics from Tulane and a M.S. in mechanical engineering from the Naval Post-Graduate School in Monterey, CA. Exhibit A to Response [66-1], at 38. According to his CV, he has "planned and scheduled over $800,000,000 in construction projects in the past seventeen years, including the $50 million

7

Margaritaville Hotel and $80 million post-Hurricane Ivan reconstruction of several buildings." *Id.* He worked as a project manager for Rapistan Systems, managing design/build projects for various clients, including Wal-Mart, and he worked for Lockwood Greene as a project engineer and field engineer. *Id.* Finally, he has managed construction schedules for "[m]ultiple projects for NASA," as well as the Mar-Jac expansion at issue in this case. Exhibit 1 to Motion in Limine at 4, *John C. Nelson Constr., LLC v. Britt, Peters & Assocs., Inc.*, No. 2:18-CV-222-KS-MTP (S.D. Miss. Feb. 7, 2020), ECF No. 54-2.

As noted above, a proposed expert does not have to be "highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss*, 571 F.3d at 452. Buziak is plainly qualified by education and experience to provide expert testimony as to the standard of care owed by a professional engineer. All the issues Defendants raised in briefing – such as his lack of experience designing a project that connects two buildings, designing fire protection systems, or designing dock levelers – go to the weight of his testimony, rather than its admissibility.

## B.   *Reliability*

Next, Defendants argue that Buziak's opinions are unreliable because they are "nothing more than self-proclaimed unproven statements." Memorandum [59], at 11. Defendants also argue that Buziak did not review the construction plans/drawings related to Plaintiffs' claims before forming his opinions. *Id.* at 11-12. Defendants only

provided one example of how Buziak's alleged failure to review the plans affected his opinions, related to the connection of a dock leveler to the building structure. *Id.* at 12-13.

Rule 702 specifically requires that an expert's testimony be based upon sufficient facts or data. FED. R. EVID. 702(b). Phrased differently, expert testimony "must be supported by appropriate validation – i.e. good grounds, based on what is known." *Daubert*, 509 U.S. at 509 (punctuation omitted). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz*, 555 F.3d at 388. Therefore, expert testimony must be supported by "more than subjective belief or unsupported speculation." *Id.* "Although the *Daubert* reliability analysis is flexible and the proponent of expert testimony need not satisfy every one of its factors, the existence of sufficient facts is . . . in all cases mandatory," *Moore*, 547 F. App'x 515, and "a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support hat expert's opinion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007). "Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Valencia*, 600 F.3d at 424.

Although Buziak admitted that he did not review all the relevant drawings/plans when forming his opinions, Exhibit 1 [54-2], at 21, he testified that

he did, in fact, consider and rely upon some of them. *Id.* at 9-10, 17-18, 24-25, 29. It's not clear from the deposition transcript whether the drawings he considered included every revision, but he plainly reviewed construction plans/drawings related to Plaintiff's claims before forming his opinions. Additionally, Buziak considered and relied upon the National Society of Professional Engineers Code of Ethics for Engineers, as well as the Rules and Regulations of the Mississippi Board of Licensure for Professional Engineers and Surveyors. Exhibit 1 [66-1], at 7. He also relied upon the parties' correspondence during the project, and depositions of several individuals, including Defendant Underwood. *Id.* at 6.

Defendants have not demonstrated that Buziak's opinions were based on nothing more than his own unsupported *ipse dixit*. He cited an applicable code of ethics, as well as the rules and regulations which govern professional engineers in Mississippi. He examined drawings and plans, and he read and considered the parties' correspondence during the events in question. Defendants may have some material for cross-examination, but they have not demonstrated that Buziak's opinions are wholly unsupported. "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion." *Rosier v. Wood Towing, LLC*, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)); *see also Brown v. Ford Motor Co.*, 121 F. Supp. 3d 606, 612 (S.D. Miss. 2015); *Gulf Restoration Network v. Oscar Renda Contracting, Inc.*, 2018 WL 6579171, at *5 (S.D. Miss. Dec. 13, 2018).

Buziak cited some basis for his opinions. Therefore, they are not wholly unreliable.

## C.    *Competency*

Finally, Defendants argue that Buziak is not competent to provide expert engineering testimony because he is not a licensed professional engineer in Mississippi. Rule 601 provides: "Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions . . . , with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." FED. R. EVID. 601. Therefore, because this is a diversity case, Defendants argue that Buziak's competency to provide expert testimony is governed by Mississippi law. Mississippi law specifically defines providing "expert technical testimony evaluation" as the "practice of engineering," MISS. CODE ANN. § 73-13-3, and it requires those practicing engineering to be licensed. MISS. CODE ANN. § 73-13-1.

First, this issue is moot because Plaintiff provided undisputed evidence that Buziak is now licensed in Mississippi. Regardless, the undersigned judge agrees with Judge Guirola's analysis of this issue in two prior cases. *See Lobell v. Grand Casinos of Mississippi, Inc.-Biloxi*, 2010 WL 4553563, at *2 (S.D. Miss. Nov. 3, 2010); *Biloxi Yacht Club, Inc. v. Grand Casinos of Miss., Inc.-Biloxi*, 2009 WL 10676951, at *1 (S.D. Miss. Feb. 23, 2009). The admissibility of expert testimony under Rule 702 is not a competency question, and Rule 601 is inapplicable in this context. Neither Mississippi's legislature nor its courts have the authority to determine the

admissibility of expert testimony in a federal court. If an expert's anticipated testimony "constitutes the unlicensed practice of engineering" under Mississippi law, "then that is between [the expert] and the Mississippi Board of Engineering." *Biloxi Yacht Club*, 2009 WL 10676951, at *1. This Court's only concern is whether the proponent of expert testimony has satisfied Rule 702.[1]

For all these reasons, the Court denies Defendants' Motion in Limine [54] to exclude the testimony of Plaintiff's expert, John Buziak.

### III. MOTION FOR SUMMARY JUDGMENT [53] AS TO ARBITRATION AWARD

Defendants also filed a Motion for Summary Judgment [53], in which they argue that Plaintiff's claims are barred by the doctrine of collateral estoppel. Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its

---

[1] Even if Mississippi law determined the admissibility of expert testimony in federal court, the Mississippi Supreme Court has held that an engineering expert's licensure in Mississippi has no bearing on his qualification under Mississippi's version of Rule 702. *Tellus Operating Group, LLC v. Tex. Petroleum Inv. Co.*, 105 So. 3d 274, 279 (Miss. 2012).

resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

Plaintiff initially made a demand on Mar-Jac, seeking payment of approximately $9.7 million that Plaintiff contends Mar-Jac owed under their construction contract. Plaintiff and Mar-Jac arbitrated the dispute, and the arbitration panel awarded Plaintiff $910,534.00. Defendants argue that the Court should apply the doctrine of collateral estoppel and hold that the arbitration award precludes Plaintiff's claims in this case.

Under the doctrine of collateral estoppel, or issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *In re Hoffman*, -- F.3d -- , 2020 WL 1659450,

at *2 (5th Cir. Apr. 3, 2020). Issue preclusion is appropriate where four conditions are met. *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994). "First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair." *Id.*

"The parties to the suits need not be completely identical, so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009). Indeed, "issue preclusion is designed to prevent plaintiffs from asserting the same factual allegations against different defendants in successive actions." *United States ex rel. Gage v. Rolls-Royce N. Am., Inc.*, 760 F. App'x 314, 317 (5th Cir. 2019) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-30, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)). "Filing the same suit against different defendants in a piecemeal fashion is inefficient," wasting "litigants' resources and adjudicators' time." *Id.* Collateral estoppel "prevents a plaintiff from relitigating identical issues by merely switching adversaries, thereby encouraging the plaintiff to join all potential defendants in the first action if possible." *Id.* But collateral estoppel "does not prevent parties from relitigating an issue unless the facts and the legal standard used to assess them are the same in both proceedings." *Id.*

14

"[A]rbitral proceedings *can* have preclusive effect . . . ." *Grimes v. Burlington Northern Santa Fe Ry.*, 746 F.3d 184, 188 (5th Cir. 2014). "A district court has broad discretion to decide whether to apply the doctrine, at least when the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written opinion." *Id.* The Court "must carefully consider whether procedural differences between arbitration and the district court proceeding might prejudice the party challenging the use of . . . collateral estoppel. If the procedural differences might be likely to cause a different result, then collateral estoppel is inappropriate." *Id.* The Fifth Circuit has also emphasized that the arbiter's findings must be "within [his] authority and expertise," and the arbitration procedures must "adequately protect[ ] the rights of the parties." *Id.* The parties' rights are protected "when an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence." *Id.*

Defendants did not provide a copy of the parties' pleadings from arbitration. They did, however, provide a copy of the arbitration award. Exhibit 2 to Motion for Summary Judgment at 93-97, *John C. Nelson Constr., LLC v. Britt, Peters & Assocs., Inc.*, No. 2:18-CV-222-KS-MTP (S.D. Miss. Jan. 15, 2020), ECF No. 53-4. The award is a cursory, six-page document. It does not include any discussion of the evidence presented at the arbitration. Likewise, it does not include a summary of the parties' arguments, or the reasoning underlying the arbitration panel's decision. It does, however, include a brief summary of Plaintiff's claims in arbitration, including its

15

claim that Mar-Jac "delayed the work," causing delay damages of $2,235,384.31.

In this case, Plaintiff alleges that Defendants committed professional malpractice by failing to provide timely designs for the construction project, providing insufficient and/or defective designs, and negligently managing the construction project. *See* Amended Complaint, *John C. Nelson Constr., LLC v. Britt, Peters & Assocs., Inc.*, No. 2:18-CV-222-KS-MTP (S.D. Miss. Dec. 28, 2018), ECF No. 3. Plaintiff initially demanded "at least $9,600,000.00" in damages, which it contends is the "increased cost of work, lost funds and delays" caused by Defendants' negligence. *Id.* at 6.

Defendants argue that Plaintiff's claims against Mar-Jac in the arbitration encompassed its claims against Defendants, and that all the claims for damages in this case have already been adjudicated by the arbitration. Defendants cite Plaintiff's discovery responses, in which they refer to evidence presented at the arbitration. Defendants also note that many of the exhibits from arbitration have been produced in this case. But "there may be more than one proximate cause of an . . . injury, and where there is more than one proximate cause each of the concurrent efficient causes contributing directly to the . . . injury is the proximate cause thereof." *Kiddy v. Lipscomb*, 628 So. 3d 1355, 1358 (Miss. 1993); *see also* MISS. CODE ANN. § 85-5-7. Mar-Jac and Defendants may have both contributed to the same damages, and some overlap in the evidence is inevitable.

Defendants also argue that Mar-Jac is contractually responsible for all claims

made by Plaintiff, but that issue is beyond the scope of this litigation. Mar-Jac is not a party here, and Defendants have not sought to join it in any capacity. The Court is not going to make a decision regarding Mar-Jac's obligations in its absence.

In the end, Defendants have not provided the Court with evidence demonstrating that "the issue under consideration in" this lawsuit is "identical to the issue litigated in" the arbitration. *Shanbaum*, 10 F.3d at 311. The arbitration panel did not provide a "detailed written opinion" for the Court to compare to the current case. *Grimes*, 746 F.3d at 188; *see also Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991). The Court does not have the parties' pleadings or the evidence presented at the arbitration, and the panel's decision included no discussion of the evidence or the parties' arguments. The Court does not know the legal standard applied by the arbitration panel, or the facts they considered. *Gage*, 760 F. App'x at 317. It is evident, though, that the question of Defendants' liability was never addressed by the arbitration panel. In fact, it's possible, based on the record before the Court, that the arbitration panel declined to impose liability on Mar-Jac because it felt that Defendants were at fault. The Court just doesn't know.

For these reasons, the Court denies Defendants' Motion for Summary Judgment [53] on the Preclusive Effect of the Arbitration Award.

## IV. MOTION FOR SUMMARY JUDGMENT [52]

Defendants filed another Motion for Summary Judgment [52], arguing that Plaintiff cannot meet its burden of proof. Plaintiff asserted professional negligence

claims against the Defendants. The elements of negligence are well-established: (1) duty, (2) breach of duty, (3) causation, and (4) damages caused by the breach. *Caldarera*, 2013 WL 5937396 at *7 (applying basic negligence elements to professional negligence claim). "Mississippi law imposes on design professionals (architects/engineers) the duty to exercise ordinarily professional skill and diligence." *Magnolia Constr.*, 518 So. 2d at 1202. Additionally, an engineer or architect's duties can arise under a contract, but the obligation to exercise ordinary professional skill and diligence arises independent of any contractual obligations. *Lyndon Prop. Ins. Co. v. Duke Levy & Assocs.*, 475 F.3d 268, 273 (5th Cir. 2007).

## A.    *Breach*

First, Defendants argue that Plaintiff has no evidence that they breached any duty. The Court denied Defendants' Motion in Limine [54] to exclude the opinions of Plaintiff's expert, John Buziak. Buziak's report and deposition testimony include opinion testimony that Defendants failed to exercise ordinary professional skill and diligence. Therefore, there is a genuine dispute of material fact as to whether Defendants breached the applicable standard of care.

## B.    *Causation*

Next, Defendants argue that Plaintiff has no evidence that their alleged breach of the applicable standard of care caused Plaintiff's alleged damages. The Court disagrees.

Buziak stated in his report that Defendants' "poor performance as engineers

18

resulted in delays and greatly increased the cost of this Project to the Contractor and the Owner." Exhibit A [66-1], at 20. During his deposition, Buziak clarified that he only quantified the "time impact" of the delays, and not the "cost impact." Exhibit 1 [54-2], at 3.

To put a money value on the delays caused by Defendants' alleged negligence, Plaintiff designated its General Manager, Scott Addison, as a non-retained expert. Exhibit A [66-1], at 2. Plaintiff produced an itemization of design defects, the cost to cure them, delay time, and the damages claimed per day. Exhibits B & C to Response, *John C. Nelson Constr., LLC v. Britt, Peters & Assocs., Inc.*, No. 2:18-CV-222-KS-MTP (S.D. Miss. Feb. 7, 2020), ECF Nos. 66-2, 66-3. In his deposition testimony, Addison provided lengthy testimony as to why he believes that Defendants caused the alleged delays, and how he reached his conclusions as to the money values. Exhibit 2 [53-4]. This evidence creates a genuine dispute of material fact as to whether Defendants' alleged negligence caused Plaintiff to suffer damages.

Defendants argue that Addison is not qualified to provide expert testimony. The Court declines to address this issue because Defendants did not raise it in a separate motion, and the parties' briefing on the issue is insufficient. Of course, this does not foreclose Defendants' right to raise the issue at trial.

Defendants also argue that Plaintiff did not provide an expert's report from Addison. Again, Defendants did not raise this issue in a separate motion, and the parties' briefing is insufficient. Regardless, Plaintiff designated Addison as a non-

19

retained expert, and Rule 26 only requires parties to provide reports from witnesses "retained or specially employed to provide expert testimony . . . ." FED. R. CIV. P. 26(a)(2). Even if Plaintiff were required to produce a report from Addison, its failure to do so appears to be harmless because Defendants had a chance to depose him. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (providing factors to consider when a party fails to disclose expert testimony).

## C.   *Punitive Damages*

Finally, Defendants argue that Plaintiff has no evidence to support a claim for punitive damages. "Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). Punitive damages are generally only allowed "where the facts are highly unusual and the cases extreme." *Wise v. Valley Bank*, 861 So. 2d 1029, 1035 (Miss. 2003). "[S]imple negligence is not of itself evidence sufficient to support punitive damages, but accompanying facts and circumstances may be used to show that . . . defendant's conduct . . . was willful and wanton or grossly negligent." *Choctaw Maid Farms v. Hailey*, 822 So. 2d 911, 924 (Miss. 2002).

In response to Defendants' motion, Plaintiff contends that it is under no obligation to offer any evidence in support of its claim for punitive damages at this stage of the proceedings. Plaintiff is mistaken. "At the summary judgment stage, the

plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts" supporting its claims. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332-33 (5th Cir. 2002); *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (party opposing summary judgment must "identify specific evidence in the record" and "articulate precisely how this evidence supports his claim"). Plaintiff has not directed the Court to any evidence in support of its punitive damages claim, and the Court is not obligated to search through the record for such evidence. *RSR Corp.*, 612 F.3d at 857. The Court grants this aspect of Defendants' Motion for Summary Judgment [52]

## V. CONCLUSION

For these reasons, the Court **denies** Defendants' Motion in Limine [54] to exclude the opinions and testimony of John Buziak and **denies** Defendants' Motion for Summary Judgment [53] on the Preclusive Effect of the Arbitration Award. However, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [52]; the Court grants the motion as to Plaintiff's punitive damages claim, but denies it in all other respects.

SO ORDERED AND ADJUDGED this 27th day of April, 2020.

_____/s/_____   Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE